WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon A. Provencio,<br><br>                    Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>                    Defendant. | No. CV 11-141-TUC-BPV<br><br>**ORDER** |

Plaintiff applied for Disability Insurance Benefits (DIB) on September 8, 2006, alleging disability due to fibromyalgia, manic depression, valley fever, asthma, tmj, insomnia, and hypertension. Tr. 118-124, 142-154. The application was denied initially, (Administrative Transcript (Tr.) 72-75), on reconsideration, (Tr. 76-78), and after an administrative hearing before an Administrative Law Judge (ALJ) held on April 20, 2009, (Tr. 26-68). The ALJ issued a written decision on June 18, 2009, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 13-24. This decision became the final decision for purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied review. Tr. 2.

Plaintiff now brings this action for review of the final decision of the

Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The United States Magistrate Judge has received the written consent of both parties, and, accordingly, presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73.

After considering the record before the Court and the parties' briefing of the issues, the Court will reverse Defendant's decision and remand for further proceedings.

## I.   BACKGROUND

Plaintiff alleges an onset of disability of April 1, 2006. Plaintiff was born in 1983, and was 22 years old as of the alleged disability onset date. Plaintiff has a high school education. Plaintiff worked most recently as a dog groomer at a pet store following an honorable discharge (medical) after a year and a half working in munitions in the Air Force.  Prior to joining the Air Force Plaintiff had been employed to deliver pizzas and as a games attendant at an amusement park. Plaintiff began suffering joint pains around September, 2003, concurrent with contracting valley fever (coccidioidomycosis). Although the valley fever resolved, the joint pain persisted and Plaintiff was subsequently diagnosed with fibromyalgia. Following Plaintiff's diagnosis of valley fever, but prior to the alleged onset date, Plaintiff developed major depression and was hospitalized for a week in the psychiatric unit of the VA. Since that time, Plaintiff has received outpatient psychiatric care from the VA for mental health impairments. Plaintiff was given a service connected disability rating of 70 percent from the Department of Veterans Affairs (VA), with a 50 percent disability rating due to major depressive disorder and a 40 percent rating assigned to fibromyalgia.

## II.   STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court will set aside a denial of benefits only if the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir, 1982)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'" *Smolen*, 80 F.3d at 1279 (quoting *Perales*, 402 U.S. at 401 and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009);*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

## III.   DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or

equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. § 404.1520.

In her decision, the ALJ found Plaintiff had not engaged in substantial gainful activity from April 1, 2006, the alleged onset date. Tr. 18. At step two, the ALJ found Plaintiff had fibromyalgia and post valley fever, impairments that were "severe" pursuant to the regulations. Tr. 18. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 19-20.

The ALJ found Plaintiff had the residual functional capacity to perform the full range of medium work. Tr. 20. At step four, the ALJ found Plaintiff was able to perform his past relevant work as a dog groomer, a game attendant and a pizza delivery driver. Tr. 23. Therefore, the ALJ found Plaintiff was not disabled at any time from April 1, 2006 through the date of her decision. Tr. 24.

Plaintiff argues that the ALJ erred by (1) finding that Plaintiff's mental impairments are not severe at step two; (2) failing to consider his mental impairments on a longitudinal basis; (3) failing to consider his impairments in combination; (4) rejecting Plaintiff's symptom testimony; (5) rejecting the treating psychiatrist's opinion; and (6) giving little weight to the disability decision of the Department of Veterans Affairs. Plaintiff contends that the Court should exercise its discretion to remand for additional administrative proceedings.

1
2
3

   The Commissioner responds, arguing that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff was not disabled, and that the errors alleged by Plaintiff do not warrant reversal or remand.

4
5

   A.  Step Two Determination: Mental Impairment

6
7
8
9
10
11
12
13
14
15

   At step two of the five step evaluation, the ALJ found that Plaintiff's medically determinable mental impairment of affective disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and thus was found to be nonsevere. Tr. 18. The ALJ found that Plaintiff had no more than "mild" limitations in the first three broad functional areas described in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), the areas of daily living, social functioning, and concentration, persistence or pace, and that Plaintiff had "no" episodes of decompensation which had been of extended duration. Tr. 19.

16
17
18
19
20
21
22

   The Commissioner argues that the ALJ's step two determination was not error, but even if the ALJ did err in making a step-two determination, the error was harmless because the ALJ considered the combined effect of Plaintiff's impairments, including Plaintiff's mental impairments, in determining that Plaintiff had the residual functional capacity to perform medium work.

23
24
25
26
27
28

   Once a claimant has demonstrated that she is not engaged in substantial gainful activity, the ALJ must proceed to step two to determine whether the claimant has a medically severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 CFR § 404.1520(c). Under the regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly

limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). *See also Bowen v. Yuckert*, 482 U.S. 137 (1987) (at step two, the Commissioner makes an initial determination of medical severity without consideration of the claimant's age, education, and experience); SSR 96-3p (an impairment is "not severe" when medical evidence establishes only "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.") Basic work activities are "the abilities and aptitudes necessary to do most jobs" such as walking, standing sitting and other physical functions, understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 CFR. § 404.1521(b).

The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Webb*, 433 F.3d at 687 (citing SSR 85-28); *Yuckert*, 482 U.S. at 153. In making this determination in regards to claims of a mental impairment, an ALJ is required to "'document application of the [Psychiatric Review Technique] in the decision.'" *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (quoting 20 C.F.R. § 404.1520a(e)); *see also Dykstra v. Barnhart*, 94 Fed.Appx. 449, 450 (9th Cir. 2004). This technique is reflected in a Psychiatric Review Technique Form ("PRTF"), wherein the reviewer must: 1) "determine whether an applicant has a medically determinable mental impairment"; 2) "rate the degree of functional limitation for four functional areas"; and 3) "determine the severity of the mental impairment (in part based on the degree of functional limitation)." *Keyser*, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a). The four

functional areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Accordingly, the ALJ's written opinion must "incorporate the pertinent findings and conclusions based on the technique" and "include a specific finding as to the degree of limitation in each of the functional areas." *Keyser*, 648 F.3d at 725 (citations and internal quotations omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687; *see also Orr v. Astrue*, 2008 WL 344528 (D.Ariz. February 7, 2008) (If a finding of non-severity is not clearly established by medical evidence, adjudication must continue through the sequential evaluation process.) Thus, substantial evidence must support the ALJ's finding "that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id. See also Yuckert v. Bowen*, 841 F.2d 303, 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

In making her step two determination, the ALJ's conclusion was not clearly established by the medical evidence. The ALJ relied on a small sampling of evidence from the record to support her finding: the evidence Plaintiff reported in the form he completed with his disability application (Function Report- Adult), Tr. 172-178, a few selected treatment notes from a clinical nurse specialist at the Veteran's Hospital, Tr. 303,

308, and from a licensed clinical social worker at the Veteran's Hospital, Tr. 639-640, 642, and one page from the consulting examiner's Medical Source Statement of Ability to do Work Related Activities (Mental), Tr. 350. *See* Tr. 19 (ALJ's discussion and rating of the degree of functional limitation in the four functional areas).

In making the step two determination, the ALJ completely failed to discuss the abundance of medical evidence provided by Plaintiff's mental health care providers at the Veteran's Hospital, or from the VA's consultative examiners, or the State agency consultative examiner. A review of this medical evidence establishes that Plaintiff's mental impairment had more than a minimal effect on his ability to do basic work activities.

On August 4, 2004, prior to the date Plaintiff alleges disability, Plaintiff was examined by psychiatrist John Clymer, M.D., for purposes of a compensation and pension examination for the VA, and was diagnosed with major depression. Tr. 262-63 Dr. Clymer rated Plaintiff's GAF score at 50[1] "with serious symptoms, serious impairment in social and occupational function, and unable to keep a job." Tr. 263.

---

[1] GAF Scores range from 1-100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, p.32 (4th ed.). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F .3d 1161, 1164 n. 2 (9th Cir. 1998). In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. *Id.* at 34.

A GAF score of 41-50 indicates:

> Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

*Id.* A GAF score of 51-60 indicates:

On August 2, 2006, after the date Plaintiff alleges disability, Andrew Jones, Ph.D., a psychologist, examined Plaintiff for purposes of a compensation and pension examination for the VA, and diagnosed him with "Major depressive disorder, recurrent, severe" and provided a GAF score of 49. Tr. 251. Dr. Jones also noted a "significant sleep impairment." Tr. 251. Dr. Jones opined that Plaintiff's symptoms were "high and the duration of symptoms has been chronic" with worsening of symptoms despite psychotropic medication treatment. Tr. 250. Dr. Jones also noted that emotional difficulties are "to a severe enough extent that they are impeding him from being able to look for and engage in viable employment; therefore, his current unemployment is at least partially due to the effects of a mental disorder and I doubt that in his current level of physical and emotional functioning he would be able to sustain a job long term." Tr. 250. Dr. Jones noted that while Plaintiff was able to complete basic activities of daily living independently and meet family responsibilities, he isolates himself socially and is not engaging in many social activities, and is having difficulty interacting with others due

---

Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.

*Id.* A GAF score of 61-70 indicates:

Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

*Id.*

1    to low stress tolerance and irritability, and "[a]t this time, he [is] temporarily unable to

2    meet work demands and responsibilities." Tr. 251.

3          On November 16, 2006, Plaintiff was treated by a VA psychiatrist Edwin Kroon,

4    M.D., who provided a diagnosis of "passive dependent type personality" and reported

5

6    Plaintiff had problems with "depressed mood" and "insomnia." Tr. 297.

7          Plaintiff was treated by VA psychiatrist Lawrence Climo on March 26, 2007, who

8    noted Plaintiff had a problem with "depression with angry moods" as well as insomnia

9

10   Tr. 268.

11         At the request of the Commissioner, Dr. Yost examined Plaintiff and was also

12   provided medical records to review, including a Health Summary from the Veterans

13

14   Hospital printed on April 24, 2007. Tr. 345-354.[2] The Health Summary included a

15   diagnosis of "major depressive disorder, recurrent, severe."  Tr. 345. Dr. Yost noted that

16   Plaintiff's overall mood was depressed and that he spoke in a very slow voice and

17

18   interacted in a very slow manner. Tr. 346. Dr. Yost diagnosed bipolar affective disorder,

19   currently depressed. Tr. 347. In a questionnaire on work-related activities, Dr. Yost

20   opined that Plaintiff would be "moderately limited" (either fair or limited, but not

21

22   precluded) in the ability to perform activities within a schedule, maintain regular

23   attendance, and be punctual within customary tolerances, and to complete a normal

24   workday and workweek without interruptions from psychologically based symptoms and

25

26   _____

27         [2] Dr. Yost's report and Medical Source Statement of Ability to do Work Related
     Activities (Mental), can be found at pages 336-344 of the administrative record and are
28   duplicated at pages 345-353. The second set of documents, though identical to the first,
     have been electronically signed by Dr. Yost.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 349-50. Dr. Yost opined that Plaintiff was "not significantly limited" (either good or mild limitations) in most other work-related activities, and found "no evidence of limitation" (very good) in the categories of the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. Tr. 348-52. Dr. Yost assigned Plaintiff a GAF score of 51-60, indicating moderate symptoms or moderate difficulty in social or occupational functioning. Tr. 347.

Dr. Wilcox diagnosed Plaintiff as suffering from depression, low mood and disordered sleep and assessed a GAF of 63 on August 30, 2007. Tr. 439-42. On October 30, 2007, Dr. Wilcox assessed Plaintiff with low mood and irregular sleep and established a treatment plan to address Plaintiff's depression. Tr. 418-19. Plaintiff saw Dr. Wilcox in December 2007 complaining of fatigue and anxiety, but denying severe depression. Tr. 654-56. Dr. Wilcox noted that Plaintiff's mood was mildly depressed and he was suffering from nervous tension and anxiety and assessed a GAF score of 62. Tr. 655-56. On February 5, 2008, Dr. Wilcox noted that Plaintiff appeared tired, his sleep was still difficult, he complained of pain, and his mood was euthymic. Tr. 637. Dr. Wilcox maintained Plaintiff's diagnoses as depression and anxiety. Tr. 638. Dr. Wilcox reported that: "[Plaintiff] is clearly disabled by his symptoms." Tr. 637. In March 2008, Dr. Wilson again diagnosed depression, anxiety, nervous tension and insomnia and assessed a GAF score of 62. Tr. 611-14.

In a questionnaire dated November 17, 2008, Dr. Wilcox reported that Plaintiff was suffering from post traumatic stress disorder, depression and anxiety. Tr. 480-84. His

symptoms included fatigue, anxiety, poor sleep, nightmares and depression. Tr. 480. Dr. Wilcox did not think that Plaintiff could tolerate even a low stress job because he was "too anxious." Tr. 481. He opined that Plaintiff's pain and other symptoms would "frequently" interfere with the attention and concentration needed to perform simple work tasks. Tr. 481. Dr. Wilcox also reported that Plaintiff's impairments were likely to produce "good days" and "bad days." Tr. 483. Dr. Wilcox continued to treat Plaintiff for depression and anxiety through December, 2008. Tr. 573.

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985 WL 56856 at *4 (1985) (Program Policy Statement; Titles II and XVI: Medical Impairments That Are Not Severe). The ALJ erred at step two by failing to carefully evaluate all of the medical findings which described Plaintiff's mental impairment and making an informed judgment about the limiting effect such impairment would have on Plaintiff's ability to perform basic work activities. The ALJ considered only a small handful of evidence in making her determination, and ignored the most salient evidence in the record, the treatment notes from Plaintiff's treating psychiatrists and psychologists, as well as examination notes from two different psychiatrists who examined Plaintiff. An impairment or combination of impairments can be found "not severe" only if the medical evidence clearly establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."

SSR 85-28, 1985 WL 56856 at *3 (1985); *see also Webb*, 433 F.3d at 686; *Smolen*, 80 F.3d at 1290; *Yuckert*, 841 F.2d at 306 (adopting SSR 85-28). A review of the medical evidence of record from Plaintiff's treating sources, as well as consultative examiners, establishes that Plaintiff's mental impairment was more than a slight abnormality with a minimal effect on Plaintiff's ability to work; the medical evidence of record establishes that the impairment was a persistent and serious condition which Plaintiff's treating psychiatrists believed was both severe and disabling.

Plaintiff argues that the ALJ's error at the step two determination is not evaluated under a harmless error analysis, citing *Keyser*, 648 F.3d at 725. Plaintiff's reliance on *Keyser* is misplaced. In *Keyser*, "the written decision did not document the ALJ's application of the [psychiatric review] technique and did not include a specific finding as to the degree of limitation in any of the four functional areas." *Keyser*, 648 F3d at 726. Instead, the ALJ simply referenced and adopted a Psychiatric Review Technique Form ("PRTF") completed by a state agency medical consultant and "did not state his findings as to the four functional areas." *Id*. As a result, the ALJ's analysis at step three also was erroneous because he never addressed whether the claimant's mental impairment met or equaled a listed impairment. The court found that this error was "understandable given the ALJ's adoption" of the state agency medical consultant's "conclusion that the mental impairment was not severe." *Id* at 727.

Unlike *Keyser*, the ALJ in this case did not fail to document the determination of the severity of Plaintiff's mental impairment, and Plaintiff does not argue that any alleged error in the step two determination tainted the ALJ's step three analysis, rather, Plaintiff

submits that "the ALJ's disregard of plaintiff's mental impairments at step two adversely affected her evaluation of plaintiff's residual functional capacity (RFC) at step four." (Doc. 33, at 3) Because the ALJ's written decision documented the ALJ's application of the technique and also included a specific finding as to the degree of limitation in the four functional areas, the Court finds that this case, unlike *Keyser*, should be reviewed under a harmless error analysis. *See Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed Appx 60, 61 (9th Cir. 2010)(unpublished decision) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *see also Mondragon v. Astrue*, 364 Fed Appx 346, 348 (9th Cir. 2010)(unpublished decision) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments.").

B.  Step Four: Residual Functional Capacity Determination

The ALJ found Plaintiff had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c). In doing so, the ALJ gave great weight to the opinion of Dr. Yost, gave little weight to the opinion of Dr. Wilcox, gave little weight to the VA disability determination, and found Plaintiff to be not credible.

The ALJ found that, "in terms of the claimant's alleged depression, the medical evidence of record reflects that claimant's mental impairment has been treated through medication and counseling, and that claimant has been able to control his symptoms in this manner." Tr. 21 The ALJ cited as support for this statement one treatment note from

a clinical nurse specialist at the Veteran's Hospital, assessing Plaintiff with depression, dependent personality disorder, and fibromyalgia, but with "fair control of Major [Depression] with current meds." Tr. 289.

The ALJ further found that "[t]here is little, if any, evidence in the medical record that indicates that claimant has been unable to work due to his mental impairment. Indeed, the medical evidence of record is replete with indications that claimant is able to perform his activities of daily living and that claimant could, indeed perform work." Tr. 21.

Plaintiff argues that the ALJ erred in her rejection of Plaintiff's testimony and the treating psychiatrist's opinion, and by giving little weight to the VA's disability determination. The Commissioner argues that the ALJ reasonably found that Plaintiff retained the residual functional capacity to perform the full range of medium work, and that this finding is supported by substantial evidence and free of harmful legal error.

*1.  Evaluation of Medical Source Opinions*

    a.  <u>Treating Psychiatrist Dr. Wilcox</u>

Plaintiff argues that the ALJ erred by rejecting Dr. Wilcox's opinion. The undersigned agrees. The ALJ gave little weight to Dr. Wilcox's opinion[3], finding it to be "not consistent with the claimant's global assessment of functioning (GAF) scores, which reflected only mild symptoms. Tr. 21. GAF Scores range from 1-100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.), at 32. "A GAF score is a rough estimate of an individual's psychological, social, and

_____

[3] Described in Section I.A. of this order.

occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. *Diagnostic and Statistical Manual of Mental Disorders,* at 34.

The ALJ found that "Doctor Wilcox's opinion that claimant is incapable of even low stress jobs due to his mental impairment is incompatible with the claimant's GAF scores, especially when the GAF scores are evaluated longitudinally." Tr. 22 (Noting GAF scores in the record ranging from 50 to 64, through a time period from August 30, 2007 to November 18, 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing' reasons.' " *Carmickle v. Commissioner*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). Where such an opinion is contradicted, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* When rejecting the opinion of a treating physician, the ALJ can meet this " 'burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.' " *Tommasetti*, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not

1   entitled to controlling weight, not that the opinion should be rejected. *Orn*, 495 F.3d 625,

2   632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). Treating source medical opinions are

3   still entitled to deference and, "[i]n many cases, will be entitled to the greatest weight and

4   should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d

5   at 632; *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes

6   to disregard the opinion of the treating physician, he or she must make findings setting

7   forth specific, legitimate reasons for doing so that are based on substantial evidence in the

8   record.") Here, Dr. Wilcox's opinion is contradicted by the opinion of consultative

9   examiner Dr. Yost. Thus, the ALJ must offer specific and legitimate reasons supported by

10  substantial evidence to reject Dr. Wilcox's opinion.

11      The ALJ's reason for rejecting Dr. Wilcox's opinion is neither legitimate nor

12  supported by substantial evidence in the record. Though the ALJ referred to Plaintiff's

13  GAF scores as reflecting only mild symptoms, the medical evidence of record

14  demonstrates that at least two of the GAF scores during the relevant period reflected

15  serious symptoms (Tr. 251 (GAF score of 49) and Tr. 642 (GAF score of 50)), and Dr.

16  Yost diagnosed Plaintiff with a GAF score of 51-60, reflecting moderate symptoms (Tr.

17  347). That some of the GAF scores reflected "mild symptoms" was consistent with Dr.

18  Wilcox's opinion that Plaintiff's impairments would produce "good days" and "bad

19  days." Tr. 483.

20      Moreover, to the extent the ALJ rejected Dr. Wilcox's opinion as incompatible

21  with the GAF scores, the ALJ failed to explain why a GAF score, a generalized

22  assessment, superseded Dr. Wilcox's more precise opinions as to Plaintiff's ability to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

work. It is important to keep in mind that, as a global reference intended to aid in treatment, 'a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work.' *Stokes v. Astrue*, 2009 WL 2216785, at *7 (M.D.Fla. July 23, 2009); *see also* 65 Fed.Reg. 50764 (Aug 21, 2000) (Commissioner cautioning that the GAF scale does not have a direct correlation to the severity requirements in Agency's mental disorders listings.") "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy" *Howard v. Comm'r Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002), and does "not dispositively assess a plaintiff's ability to work." *Garcia v. Astrue*, 2011 WL 4479843 *5 (E.D. Cal. 2011). In other words, the Commissioner has already acknowledged and anticipated that there will be inconsistencies between a claimant's GAF scores and an assessment of a claimant's ability to do work; thus it was error in this case to use this data, provided by Dr. Wilcox as well as Plaintiff's other treating sources, as a general assessment to disprove Dr. Wilcox's more detailed, expert functional assessment. Accordingly, the ALJ erred in rejecting Dr. Wilcox's opinion on the basis of the GAF scores alone.

b. <u>Consultative Examiner Dr. Yost</u>

Plaintiff argues that the ALJ erred in purporting to give "great weight" to Dr. Yost's opinion, but subsequently ignoring the parts of his report which showed that Plaintiff's depression causes more than a slight limitation in a work setting. The ALJ

gave Dr. Yost's opinion[4] "great weight" and concluded that "Dr. Yost determined that claimant's mental impairments, for the most part, did not significantly limit claimant's abilities to perform work related activities." Tr. 21. By finding that Plaintiff could do the full range of medium work, the ALJ discounted Dr. Yost's report of moderate limitations. An ALJ need not discuss all evidence presented to her, but must explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the functional limitations that the ALJ discounted were both significant and probative. The Commissioner is required to consider the claimant's RFC for work activity on a "regular and continuing basis," *see* 20 C.F.R. § 404.1545(c), and the moderate limitations reported by Dr. Yost went directly to this issue. This evidence directly contradicted the ALJ's finding that Plaintiff's activities of daily living indicate that Plaintiff's mental impairments have minimal impact, if any at all, on his ability to sustain work related activities.  The ALJ did not give any reason for discounting Dr. Yost's proposed moderate functional limitations due to Plaintiff's mental health impairment, yet failed to include these limitations in her RFC assessment. This was error.

### 2.  VA Disability Determination

"Because social security disability and VA disability programs 'serve the same governmental purpose-providing benefits to those unable to work because of a serious disability,' the ALJ must give 'great weight to a VA determination of disability.'" *Turner v Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (quoting *McCartey v.*

---

[4] Described in Section I.A. of this order.

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). However, an ALJ " 'may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record.' " *Id*. (quoting *McCartey*, 298 F.3d at 1076).

Here, the VA determined that Plaintiff had a 70 percent service connected disability: a 50 percent rating based on his major depressive disorder, and a 40 percent rating based on his fibromyalgia. Tr. 226 An evaluation of 50 percent in the general rating formula for mental disorders is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. §4.130.

A VA determination of disability is ordinarily entitled to great weight. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694-95 (9th Cir. 2009); *McCartey*, 298 F.3d at 1076. However, an ALJ may give less weight to the VA's decision if the ALJ provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Berry*, 622 F.3d at 1236; *Valentine*, 574 F.3d at 694-95; *McCartey*, 298 F.3d at 1076; *see also Turner*, 613 F.3d at 1225.

The ALJ considered, but gave little weight to the VA's disability rating,

explaining that the VA rating was not consistent with Plaintiff's current condition, that the Plaintiff had testified, and the medical evidence of record contained statements from Plaintiff, that he is able to perform his activities of daily living with minimal to no impact, and because Plaintiff testified that he quit his job at PetSmart due, in part, to the fact that the VA found him disabled and awarded him benefits. Tr. 23.

The undersigned finds these reasons unpersuasive, and invalid as a basis to reject the VA's disability rating. First, to the extent the ALJ rejected the VA rating as inconsistent with Plaintiff's current condition, the ALJ failed to explain in what way the VA rating was inconsistent with Plaintiff's current condition based on substantial evidence in the record. This argument is contrary to *McCartey*, which requires that an ALJ's decision to give less than great weight to a VA Rating Decision must be based on the record. 298 F.3d at 1076 (noting the "marked similarity" between the social security and veteran's disability programs).

The Commissioner argues that the VA rating was properly rejected because the VA's finding of a 50 percent disability rating due to depression is inconsistent with the ALJ's finding that Plaintiff's depression was not severe. (Doc. 32, at 9) This type of circular logic, however, is an invalid reason for rejecting the VA rating. The ALJ's finding that Plaintiff's depression was not "severe" does not constitute substantial evidence in the record, and cannot be a basis for rejecting the VA disability rating.

To the extent that the ALJ rejected the disability rating because it was inconsistent with Plaintiff's reports of activities of daily living, the record reflects that Dr. Jones, the psychiatrist who examined Plaintiff for purposes of his VA disability rating, fully

acknowledged that Plaintiff was able to maintain hygiene and complete basic activities of daily living independently. Tr. 251. Dr. Jones concluded, however, that despite his ability to complete basic activities of daily living and meet family responsibilities, Plaintiff was unable to meet work demands and responsibilities. Tr. 251. Such a finding demonstrates the reason why the Ninth Circuit has held that daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (emphasis omitted). Obviously, Dr. Jones considered Plaintiff's ability to complete activities of daily living as skills that were not transferable to a work setting, most likely due to "difficulty appropriately interacting with others due to low stress tolerance and irritability," as well as Plaintiff's social isolation. Tr. 251.

Accordingly, the undersigned finds that the ALJ's stated reasons for giving little weight to the VA disability determination is not persuasive, and not supported by the record.

### 3.  *Plaintiff's Credibility*

Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony. The ALJ found Plaintiff's medically-determinable impairments "could reasonably be expected to cause" the symptoms Plaintiff alleged. Tr. 21. The ALJ nonetheless concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.*

1    While an ALJ is responsible for determining the credibility of a claimant, an ALJ

2    cannot reject a claimant's testimony without giving clear and convincing reasons.

3    *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater,*

4
5    157 F.3d 715, 722 (9th Cir. 1998). In addition, the ALJ must specifically identify the

6    testimony she finds not to be credible and must explain what evidence undermines the

7    testimony. *Id.* The evidence upon which the ALJ relies must be substantial. *Orteza v.*

8
9    *Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345- 46 (9th

10   Cir.1991)(*en banc*). The ALJ failed to identify specifically what symptoms and testimony

11   provided by the Plaintiff were inconsistent and unpersuasive. *Holohan*, 246 3d at 1208.

12
13   General findings are insufficient; rather the ALJ must identify what evidence is not

14   credible and what evidence undermines Plaintiff's complaints. *Dodrill v. Shalala*, 12 F.3d

15   915, 918 (9th Cir.1993). [5]

16

17   ───────────────────

18   [5] The Commissioner argues that the "clear and convincing" standard for rejecting
     a claimant's subjective complaints "exceeds that set forth in *Bunnell*," that no Ninth

19   Circuit panel espousing a "clear and convincing" standard has sat *en banc* with the
     authority to overturn existing Ninth Circuit precedent, and that the *Bunnell* standard is

20   more consistent with the Act's requirement that findings of fact be supported by
     substantial evidence. Defendant's argument is unavailing. First of all, a requirement of

21   "clear and convincing reasons" is distinct from a clear and convincing evidentiary
     standard. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1216 )(9th Cir. 2005)("To reject an

22   uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and
     convincing reasons that are supported by substantial evidence." (emphasis added)).

23   Secondly, *Bunnell* itself requires that an ALJ "specifically make findings which support"
     the conclusion that the claimant's allegations of severity are not credible. 947 F.2d at

24   345. These findings must be "properly supported by the record' and "must be sufficiently
     specific to allow a reviewing court to conclude the adjudicator rejected the claimant's

25   testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony
     regarding pain." *Id.* at 345-47 (quotation omitted). Subsequent cases have explained that

26   "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he
     or she may only find an applicant not credible by making specific findings as to

27   credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec.*
     *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis added); *see also Lingenfelter v.*

28   *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Thus, the cases applying the "clear and
     convincing" standard in no way overturn *Bunnell*. Numerous cases have  applied the
     "clear and convincing" standard, and this Court is in no position to overrule them. *See,*

While it is not this Court's role to second guess the ALJ's interpretation, the findings made in rejecting the subjective complaints must be specific to provide the Court enough information to determine that the ALJ did not reject the claim arbitrarily, but based his decision on permissible factors. *Orteza*, 50 F.3d at 750; *Bunnell,* 947 F.2d at 345-46.  In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony from the claimant that appears less than candid; unexplained or inadequately explained failure to seek or follow a prescribed course of treatment; the claimant's daily activities; the claimant's work record; observations of treating and examining physicians and other third parties; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen,* 80 F.3d at 1284; *see also Robbins v. Social Security Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), on conflicts between his testimony and his own conduct; or internal contradictions in that testimony.").

The ALJ considered Plaintiff's allegations that the chronic pain from his fibromyalgia prevented him from engaging in work related activities, specifically that he quit his past relevant work as a dog groomer, due to the pain in his back and below his neck, and that Plaintiff's mental impairments interfere with his sleep, as he cannot "stop thinking" so that he cannot relax and fall asleep. The ALJ found that, although Plaintiff's

---

*e.g., Taylor v. Comm'r of Soc. Sec. Admin.*, 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d at 591; *Lingenfelter*, 504 F.3d at 1036; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883; *Smolen*, 80 F.3d at 1281; *Dodrill,* 12 F.3d at 918.

medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiffs "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 21.

Because the ALJ found that Provencio's medically determinable impairments could reasonably be expected to cause some degree of the symptoms alleged, and because she made no findings of malingering, the ALJ's reasons for discrediting Plaintiff's testimony must be "clear and convincing." *See Lester,* 81 F.3d at 834. ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'")

The ALJ observed that, in terms of Plaintiff's fibromyalgia, Plaintiff's own testimony and function reports indicate that his activities of daily living were minimally impacted. Tr. 21. The ALJ also noted that Plaintiff has failed to follow through with an exercise program to help alleviate his fibromyalgia, or attend self-help classes or group therapy classes. Tr. 21.

The ALJ further concluded that, in terms of Plaintiff's depression, the medical evidence of record reflects that Plaintiff's mental impairment has been treated through medication and counseling, and that Plaintiff has been able to control his symptoms in this manner. Additionally, the ALJ concluded that Plaintiff's activities of daily living indicate that Plaintiff's mental impairments have minimal impact, if any at all, on his ability to sustain work related activities. Tr. 21.

Finally, the ALJ found Plaintiff "less than credible concerning the severity of his

impairments," noting that Plaintiff had lived alone and was self-sufficient in all of his activities of daily living and chores, that Plaintiff had purchased a home, obtained roommates, and continued to perform chores and activities without assistance. Tr. 22. The ALJ observed that Plaintiff spends 2-3 hours a day playing videogames, is very competitive, and socializes and visits with his friends, spends 45 minutes on the computer chatting and shopping, and is able to manage his finances and drive back and forth to California four times a year to visit his family. Tr. 22.

First, performance of daily activities is not necessarily a clear and convincing reason to discredit plaintiff's testimony. Plaintiff's activities of daily living "do[ ] not in any way detract from h[is] credibility as to h[is] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Not all of these activities support the ALJ's rejection of Plaintiff's complaints. As the Ninth Circuit has held, "[t]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Webb*, 433 F.3d at 687-88 (citing *Vertigan*, 260 F.3d at 1050.) ("[o]ne does not need to be 'utterly incapacitated' in order to be disabled.")). First, the ALJ failed to clarify the extent to which plaintiff engages in these activities. Although plaintiff states he cooks three or four times a week, he otherwise makes "easy meals" which only require heating in the microwave. Tr. 50, 174. He does laundry about once a month and dusting about once every two weeks. Tr. 193. He drives once or twice a week. Tr. 47. He has problems doing household chores like washing dishes, sweeping and dusting due to aches in his back, arms and fingers. Tr. 50. He does watch television and play computer games

but states doing so distracts from his worries. Tr. 46, 574. Plaintiff's girlfriend reported that once or twice a week for ten to forty-five minutes, depending on the chore, he does light duties around the house, e.g. straightening up, loading the dishwashing, or laundry, when he feels able. Tr. 157. Two to three times a month, he spends thirty to forty minutes shopping, either at the store, online, or by phone or mail. Tr. 158. Most of his time is spent before the television, a change from when he did many outdoor sports and activities before he became disabled. [T. 159, 192].

The ALJ also found that plaintiff could finish tasks and relied on this finding to reject his symptoms. Tr. 21. In making this finding, she cited a questionnaire which merely asked if plaintiff could finish activities like "a conversation, chores, reading, [or] watching a movie." Tr. 21, 204. The questionnaire did not specify what type of chores or the time needed to do the chores. Tr. 204. On that same page of the questionnaire, Plaintiff indicated that he had difficulty concentrating and completing tasks. Tr. 204.

The Court finds that these reasons stated above for disbelieving Plaintiff's testimony were invalid.

In rejecting plaintiff's complaints of pain and limitation, the ALJ also cited plaintiff's alleged failure to participate in an exercise program to help lessen his fibromyalgia pain. She also noted that plaintiff did not wish to attend group therapy classes and refused to attend self-help classes or the Arthritis Foundation. Tr. 21.

Plaintiff argues that the ALJ's finding that Plaintiff failed to follow a prescribed course of treatment is not based on substantial evidence. Plaintiff submits that Plaintiff did attempt exercise programs, but with no relief of his pain, or aggravation of his pain.

Plaintiff reported several attempts to exercise, but repeatedly reported that exercise either did not relieve his pain or actually aggravated his pain. Tr. 58, 421, 537-38, 567, 584, 593, 628, 639. Thus, the ALJ improperly considered Plaintiff's failure to follow through with exercise as a factor in her credibility determination. Plaintiff's explanation for his failure to exercise was adequately documented in the medical records.

While plaintiff preferred not to attend group therapy classes because he was uncomfortable in group settings, Tr. 659, the record demonstrates that Plaintiff received individualized therapy for pain management and mental health care.   Ordinarily, noncompliance that is attributable to a "personal preference," rather than a mental impairment, is reasonably considered by the ALJ in concluding that a claimant is resisting treatment. *See Molina*, 674 F.3d at 1114 n.6 (9th Cir. 2012). In this case, Plaintiff's therapist discussed individualized therapy with Plaintiff, and concluded that it would be less helpful for him than a group interaction and learning. With no evidence that Plaintiff's resistance was attributable to his mental impairment, it was reasonable for the ALJ to consider this as a factor in her credibility determination.

Finally, Plaintiff argues that the ALJ's reliance on plaintiff's alleged refusal to attend self-help classes or the Arthritis Foundation is improper. Plaintiff argues that the records cited by the ALJ did not provide any information on whether or not plaintiff attended or how beneficial they may or may not be. The record cited by the ALJ, however, indicates that Plaintiff did not go the Arthritis Foundation "as suggested," stating that he "forgot." Tr. 293. In assessing a claimant's credibility, the ALJ "may properly rely on 'unexplained or inadequately explained failure to seek treatment or to

follow a prescribed course of treatment.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284); *Fair*, 885 F.2d at 603. Plaintiff's failure to follow through with his doctor's recommendations is an inadequately explained failure to seek treatment, and is properly considered by the ALJ as a factor in assessing Plaintiff's credibility.

Plaintiff argues that an ALJ may deny a claim for failure to follow prescribed treatment only if the claimant fails, without good reason, to follow treatment prescribed by his physician and such treatment can restore his ability to work, and that in this case none of these requirements are met. Plaintiff submits that there's no evidence that plaintiff's physician prescribed any of these activities or that they would restore his ability to work. As the Commissioner correctly argues, however, a failure to seek treatment may be considered as a factor in the ALJ's credibility determination, *see Molina v. Astrue*, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012), and was so considered here.

Though the records demonstrate that Plaintiff preferred individual therapy to group sessions and did, at times, attempt to exercise per his doctor's recommendation, the record also demonstrates that Plaintiff did not follow through with recommendations to visit the Arthritis Foundation and attend fibromyalgia self-help classes. Tr. 293. Consequently, the ALJ properly took this factor into consideration in making a determination of Plaintiff's credibility.

Though an ALJ's error in improperly rejecting a claimant's testimony may be harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the AJL's ultimate conclusion," *see Molina*, 674 F.3d at 1115, in this case the Court finds that the reasons the ALJ properly provided for

discrediting Plaintiff's testimony do not provide substantial evidence in support of the ALJ's conclusion. Plaintiff's failure to seek group therapy and visit the Arthritis Foundation are not sufficient reasons to find Plaintiff's entire testimony invalid. Most importantly, the Court concludes that the ALJ did not adequately assess Plaintiff's ability to maintain sustainable work during a standard work week in a realistic work setting. The ALJ's analysis focused primarily on Plaintiff's reported activities of daily living and how these activities somehow rendered his statements concerning the intensity, persistence and limiting effects of his symptoms "not credible."

The Court declines to instruct the ALJ to credit Plaintiff's testimony as true, however, because it is unclear which testimony the ALJ disbelieved to begin with, and certain testimony such as Plaintiff's claim of being unable to work is not the type of subjective symptom testimony entitled to be taken as true. *See* 20 C.F.R. §§ 404.1527, 404.1527(e)(1) (The Commissioner is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability.").

### 4. RFC Assessment

Finally, in her RFC assessment the ALJ found that plaintiff's mental impairments have a "minimal impact, if any at all, on his ability to sustain work related activities." T. 21. Her purported reasons for this conclusion are twofold: (1) plaintiff's activities of daily living, and (2) her belief that plaintiff's mental impairments are controllable by medication and counseling. Tr. 21. The Commissioner's findings are not supported by substantial evidence in the record as a whole.

First, the ALJ erred by giving controlling weight to Dr. Yost's opinion, but failing to acknowledge the limitations Dr. Yost ascribed to Plaintiff in the ALJ's RFC determination. *Melton v. Astrue*, 2010 WL 3853195, at *8 (D.Or. 2010), *aff'd.*, 442 Fed.Appx. 339 (9th Cir. 2011) (ALJ erred in her assessment of plaintiff's RFC where the assessment included plaintiff's restriction to simple, repetitive tasks, but did not include plaintiff's mild-to-moderate limitations in maintaining concentration, persistence, or pace). *See also Betancourt v. Astrue*, 2010 WL 4916604, at *3–4 (C.D.Cal. Nov.27, 2010) (where the ALJ accepted medical evidence of plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the VE including plaintiff's restriction to "simple, repetitive work" but excluding plaintiff's difficulties with concentration, persistence, or pace resulted in a VE's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."). In this case the ALJ accepted evidence of Plaintiff's moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Thus, the RFC, which failed to include these limitations, is materially incomplete in light of the evidence in the record and the ALJ's own findings.

Because the ALJ did not reject Dr. Yost's opinion, it was error not to include these limitations in the residual functional capacity, as they do describe function and convey the extent of Plaintiff's mental functional capacity.

1
2
3
4
5
6
7
8
9

Second, the ALJ's conclusion that Plaintiff's depression has been treated through medication and counseling, and that Plaintiff has been able to control his symptoms in this manner is not supported by the substantial evidence in the record. The ALJ's conclusion was based on one treatment note from a clinical nurse specialist, and in making her findings based on this single treatment note, the ALJ disregarded all of the treatment notes from Plaintiff's treating psychiatrists and psychologists, as well as examination notes from two different psychiatrists who examined Plaintiff.

10
11
12
13
14
15

Viewing the record as a whole, it is clear that all doctors who examined claimant agreed that claimant suffers from a mental impairment with at least some significant limitations. The ALJ rejected this strong evidence in favor of insubstantial evidence-*i.e.*, the single report of a clinical nurse specialist, combined with the Plaintiff's ability to perform activities of daily living that are not necessarily transferable to a work situation.

16
17
18
19
20
21
22
23
24
25
26
27
28

It was improper for the ALJ to selectively reference plaintiff's treatment records to support her conclusion, while ignoring other treatment records contradicting that conclusion, such as plaintiff's GAF scores and records from his treating physician. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (stating that it is error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion). *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (stating that an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

1    Therefore, the ALJ's finding that Plaintiff's mental impairment has a minimal, if

2    any, impact on his ability to sustain work related activities is not supported by substantial

3    evidence.

4

5         IV.    APPROPRIATE REMEDY ON REMAND

6         Plaintiff argues that the appropriate remedy is to remand the case for additional

7    administrative proceedings. Plaintiff further argues that, on remand, the Court should

8    direct the Commissioner to credit Plaintiff's testimony regarding his symptoms, credit

9    Dr. Wilcox's opinion, and give great weight to the VA disability determination.

10

11        The decision to remand for further development of the record or for an award of

12   benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*,

13   211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held that an action should be

14   remanded for an award of benefits where the ALJ has failed to provide legally sufficient

15   reasons for rejecting evidence, no outstanding issue remains that must be resolved before

16   a determination of disability can be made, and it is clear from the record that the ALJ

17   would be required to find the claimant disabled were the rejected evidence credited as

18   true. *See, e.g., Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988) (*Varney II*).

19   The ALJ improperly rejected Dr. Wilcox's medical opinion that Plaintiff is "incapable of

20   even 'low stress' jobs" because he is too anxious," and that Plaintiff would "frequently"

21   (34% to 66% of an 8-hour working day) have symptoms severe enough to interfere with

22   attention and concentration needed to perform even simple work tasks. Tr. 481.

23        The Commissioner argues that Dr. Wilcox's opinion that Plaintiff is incapable of

24   even low stress jobs is not a medical source opinion under the agency's regulations

because it does not specifically address Plaintiff's limitations regarding his ability to do basic work activities. (Doc. 32, at 18), citing 20 C.F.R. § 404.1513(c)(1). While Commissioner is partly correct, that Dr. Wilcox's opinion is not a medical source opinion regarding Plaintiff's *physical capabilities*, the Commissioner overlooks the second part of the regulation, which describes a medical source finding regarding *mental capabilities* as an opinion "about [claimant's] ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting. 20 C.F.R. § 404.1513(c)(2). In determining that Plaintiff could not work in even a low stress situation, Dr. Wilcox was appropriately addressing Plaintiff's ability to "respond appropriately to … work pressures in a work setting." *Id*. Moreover, though the Commissioner is correct in arguing that medical source opinions are not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability, a treating physician may render an opinion on the ultimate issue of disability, and such uncontroverted opinions may not be rejected without clear and convincing reasons for doing so, or, if controverted, by providing specific and legitimate reasons supported by substantial evidence in the record. *See Reddick,* 157 F.3d at 725. *Lester*, 81 F.3d at 830, *see also Benecke v. Barnhart*, 379 F.3d 587, 591 & n.1 (9th Cir. 2004).

Remand for further proceedings is appropriate in this case, however, because even after applying the credit as true rule to improperly rejected evidence, it is not clear from the record that the ALJ would be required to find Plaintiff disabled. Here there are issues that require resolution before a finding of disability can be made. As discussed above, the

ALJ erred not only in rejecting the opinion of Dr. Wilcox, but also in evaluating the opinion of the consultative examiner, Dr. Yost. These doctors reached different opinions. While Dr. Wilcox's opinion suggests that Plaintiff is incapable of even low stress work due to anxiety, Dr. Yost's opinion suggests that Plaintiff is limited in functional categories related to low levels of motivation, as well as hypersomnia and insomnia, but did not find significant limitations arising from Plaintiff's anxiety. Thus, it is unclear from the record that the ALJ would be required to find plaintiff disabled even if the evidence is credited as true.

There are still outstanding issues in Provencio's case regarding his residual functional capacity and his ability to perform his past relevant work, and the jobs he might be capable of performing given his mental limitations. A remand for further proceedings would allow the ALJ to properly address Drs. Wilcox's and Yost's opinions and the VA disability determination, more thoroughly address Plaintiff's credibility, and formulate an RFC taking into account all of Plaintiff's mental limitations.

Furthermore, the ALJ resolved this without calling upon a vocational expert to consider all of the testimony that is relevant to the case. This court recently wrote that "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." *Id*. at 1180. In this case, no vocational expert testified as to Plaintiff's ability to work based on the limitations described by Dr. Wilcox, Dr. Yost, and the VA disability determination. A remand for further proceedings is therefore appropriate. *See Stout*, 454 F.3d at 1056-57. Thus,

because there are "sufficient unanswered questions in the record," the district court's decision to remand the case for further administrative proceedings was not an abuse of discretion. *Harman*, 211 F.3d at 1180.

Remand is also necessary to assess Plaintiff's allegations concerning the severity of his symptoms. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(recognizing that the court is not required to credit pain testimony and instead remanding for reconsideration of plaintiff's credibility); *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (remanding where outstanding issues, including ALJ's reassessment of plaintiff's credibility, must be resolved before a disability determination can be made). Though a court may credit a Plaintiff's symptom testimony as true even where a remand for further proceedings is needed, especially in cases where a plaintiff is of advanced age and has suffered a "severe delay" in the application process, *see Vasquez*, 572 F.3d at 593–94, the undersigned declines to do so for the reasons outlined above.

IT IS ORDERED:

1.     Defendant's decision denying disability insurance benefits is reversed.

2.     The case is remanded to Defendant for further proceedings consistent with this Order.

3.     The Clerk is directed to enter judgment accordingly.

Dated this 20th day of June, 2012.

Bernardo P. Velasco
United States Magistrate Judge